UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO TELEMAQUE,

Plaintiff,

– against –

MARRIOTT INTERNATIONAL, INC., NATALIE
RODRIGUEZ, and ERIC MAZZELLA,
individually and as employers,

Defendants.

**OPINION AND ORDER**

14 Civ. 6336 (ER)

Appearances:

Garima Vir
Akin Law Group
New York, NY
*Attorney for Plaintiff*

Emily Marie Tortora
Michael J. Volpe
Venable LLP
New York, NY
*Attorneys for Defendants*

Ramos, D.J.:

Ricardo Telemaque ("Plaintiff") filed this action against his former employer, Marriott International, Inc. ("Marriott"), Natalie Rodriguez, Marriott's Director of Human Resources, and Eric Mazzella, Marriott's Director of Loss Prevention (collectively, the "Defendants"). First Amended Complaint (Doc. 10) ("Compl.") ¶¶ 58, 62. Plaintiff asserts fourteen claims against Defendants for employment discrimination and retaliation in violation of federal, state, and local laws. Defendants have moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). (Doc. 17). Specifically, Defendants contend that Plaintiff has failed to exhaust his administrative remedies as required by federal law, and that he

has failed to plead a disability within the meaning of the Americans with Disabilities Act (the "ADA"). *See* Defs.' Mem. L. Support Mot. Dismiss (Doc. 18) ("Defs.' Br."). For the reasons set forth below, Defendants' motion is GRANTED.

## I.   BACKGROUND[1]

### A.  Factual Background

Plaintiff began working at Marriott's Marquis Hotel in March 2005 as a Loss Prevention Officer ("LPO"). Compl. ¶ 16. Plaintiff's duties as an LPO included "responding to accidents," "quickly and calmly responding" to fire alarms, and "assisting guests/employees during emergency situations." Affidavit of Garima Vir (Doc. 32) ("Vir Aff."), Ex. 1 at 2. Plaintiff was diagnosed with arthritis in the insteps of both his feet in 2012, which is diagnose as "long term, chronic, or permanent," and which restricts his ability to run and exercise. Compl. ¶¶ 19, 22–28. Plaintiff also suffers from high blood pressure, though he does not specify when he first received that diagnosis. *Id.* at ¶ 38. Plaintiff's high blood pressure restricts his ability to exercise, forces him to closely monitor what he eats and drinks, and impairs his sleep when triggered by "external stressors." *Id.* at ¶¶ 39–46. Defendants were notified of Plaintiff's arthritis as early as February 28, 2013. *Id.* at ¶ 32. They were made aware of his high blood pressure at least once, shortly before the end of his employment with Marriott, on September 10, 2013. *Id.* at ¶ 52.

---

[1] The following facts are based on the allegations in the First Amended Complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The events leading up to this action began in July 2013, when Plaintiff participated in an investigation triggered by a complaint against Marriott brought by a former employee named Richard Gantt before the New York State Division of Human Rights (the "NYSDHR" or "agency").  *Id.* at ¶¶ 3, 77.  Gantt alleged that Marriott had engaged in unlawful discriminatory practices, and listed Plaintiff as a witness.  *Id.* at ¶¶ 75–76.  An investigator at NYSDHR contacted Plaintiff and spoke with him about the allegations in Gantt's complaint.  *Id.* at ¶ 78.  When Defendants became aware of Plaintiff's involvement, they instructed him not to participate any further in the Gantt investigation.  *Id.* at ¶ 81.

Prior to the Gantt investigation, Plaintiff alleges that he had "received exemplary performance evaluations" and "commendations for excellent service."  *Id.* at ¶ 2.  In the two months immediately following Plaintiff's participation in the Gantt investigation, however, Defendants issued three written disciplinary warnings to Plaintiff.  The *first* was issued on July 24, 2013, in connection with a June 21, 2013 incident where Plaintiff had allegedly failed to respond to a fire alarm while off duty (the "First Warning").  *Id.* at ¶¶ 82, 89–90.  The *second* warning came on August 15, 2013, stemming from a July 31, 2013 incident where Plaintiff had allegedly failed to call 911 in response to a "suspicious vehicle parked off property" (the "Second Warning").  *Id.* at ¶¶ 110–11.  And the *third* warning came on September 18, 2013, following an incident on August 27, 2013 in which Plaintiff was the last LPO to arrive at the scene of an argument between two guests in the hotel lobby (the "Third Warning").  *Id.* at ¶ 126.  Plaintiff protested each warning:  He contended that his actions leading to the First Warning had not violated company policy because off-duty LPOs were not required to respond to fire alarms,

3

*id.* at ¶¶ 91–94,[2] that the Second Warning was unjustified, both because his supervisor never instructed him to call 911 after Plaintiff himself had reported the suspicious vehicle and because Defendants refused to fully investigate Plaintiff's side of the story, *id.* at ¶¶ 113–19, and that his slow response leading to the Third Warning was due to his arthritis, in that his condition prevented him from running to the lobby and forced him to take the escalator instead, *id.* at ¶¶ 128–29. Plaintiff also argued that Third Warning was unjustified because he had reached the lobby in a timely manner. *Id.* at ¶ 129.[3] Plaintiff adds that Defendants have never before disciplined an LPO for failing to respond to a fire alarm while off duty, and never before disciplined an LPO for being last to arrive at the scene of a non-emergency call. *Id.* at ¶¶ 9, 92.

Despite Plaintiff's explanation of the incident leading to the Second Warning, Defendants insisted on going forward with the disciplinary action, and per company policy, scheduled an internal "Peer Review" to evaluate the merits of the Second Warning on September 12, 2013. *Id.* at ¶¶ 48, 120, 141. On September 10, 2013, however, Plaintiff gave Defendants a letter from his doctor warning that the Peer Review process was elevating Plaintiff's blood pressure levels, and requesting a three-week postponement of the Peer Review to accommodate Plaintiff's high blood pressure. *Id.* at ¶¶ 48–49.[4] Defendants refused "to determine whether a reasonable

---

[2] Plaintiff also alleges that following this first incident, Defendants "issued a new policy requiring LPOs to keep their radio[s] on while on meal break," and retroactively applied this policy to justify their issuance of the First Warning to Plaintiff. Compl. ¶¶ 95–96.

[3] Plaintiff also alleges that, during the investigation into the incident leading to the Third Warning, Defendants refused to meet with a witness who saw Plaintiff headed towards the lobby "as quickly as his arthritis would permit him," "refused to look at the security footage of the incident," and refused to investigate "exactly where [Plaintiff] was at the time the call went over the radio." Compl. ¶¶ 134–39. Indeed, following his subsequent termination, Plaintiff successfully overcame Defendants' objection to his application for unemployment benefits when an administrative law judge determined that Plaintiff "acted reasonably in responding to the scene" and found "no evidence [Plaintiff] unduly delayed in responding." *Id.* at ¶¶ 173–75.

[4] It is unclear from Plaintiff's Amended Complaint whether Defendants had knowledge of Plaintiff's high blood pressure before this letter was delivered.

4

accommodation existed," "attacked the credibility" of the doctor's note, and declined to postpone the Peer Review, all of which now forms the basis of Plaintiff's claim that Defendants failed to reasonably accommodate his disability. *Id.* at ¶¶ 143–45, 195.  This all despite that fact that "Defendants have no policy regarding when a Peer Review meeting must be held and have never before refused an employee's request, supported by a doctor's note," to delay a Peer Review meeting. *Id.* at ¶ 6.[5]  Finally, Plaintiff alleges that the Peer Review meeting itself was tainted and unfair because Defendants (i) waited until twenty minutes before the meeting started to inform Plaintiff that seven of his co-workers whom he chose to participate were on vacation and unavailable, and (ii) refused to include witnesses offered by Plaintiff. *Id.* at ¶¶ 155–69.

Under Marriott's "Progressive Discipline Policy,"[6] an employee who receives three written warnings within a twelve-month span can be suspended and subject to termination. *Id.* at ¶¶ 106–07.  Pursuant to that policy, and following issuance of the Third Warning on September 18, 2013, Defendants suspended Plaintiff. *Id.* at ¶ 154.  Plaintiff's employment with Marriott was terminated on September 25, 2013. *Id.* at ¶ 171.

## B.  Procedural Background

Plaintiff filed a complaint with the NYSDHR against Marriott on October 10, 2013. *Id.* at ¶ 67.[7]  Plaintiff has not provided the Court with the complaint submitted to the agency (the "NYSDHR Complaint"), but asserts that it "allege[d], *inter alia*, disability discrimination and

---

[5] Plaintiff further alleges that Defendants' refusal was "especially troublesome" because, prior to his involvement in the Gantt investigation, Plaintiff had previously employed the Peer Review process successfully to overturn a faulty disciplinary warning.  *See* Compl. ¶¶ 147–48.

[6] The Court may consider this policy document because it is "integral" to the Amended Complaint, which both explicitly refers to the policy and relies heavily upon its terms.  *See* Compl. ¶¶ 106–07, 150, 154.

[7] A filing with the NYSDHR operates as a filing with the Equal Employment Opportunity Commission for purposes of the ADA's exhaustion requirement, explained *infra* Part II.B.

retaliation." *Id.* The Court cannot verify this assertion without access to the NYSDHR

Complaint, but on April 11, 2014, the NYSDHR issued its Final Investigation Report and Basis

of Determination, Vir Aff., Ex. 1 (the "Report"),[8] which makes it abundantly clear that Plaintiff

asserted *only* a retaliation claim, and *did not* assert any disability-discrimination claim before the

agency.[9] In the Report, the agency characterized the NYSDHR Complaint as one charging

"unlawful discriminatory practices in relation to employment because of retaliation." Report at

1. The Report further noted that Plaintiff "filed this claim under only the basis of retaliation, but

in his rebuttal, [Plaintiff] raised issues of disability discrimination." *Id.* at 4. According to the

Report, Plaintiff chiefly complained that his disciplinary warnings came as punishment for

serving as a witness in the Gantt investigation. *Id.* In response, Marriott told NYSDHR

investigators that Plaintiff had a history of disciplinary infractions that pre-dated Gantt's

complaint. *Id.* at 2. Ultimately, the Report found that the agency's investigation had "uncovered

evidence supporting an inference of retaliation sufficient to require a public hearing," and thus

concluded that there was "probable cause to support [Plaintiff's] allegations." *Id.* at 4–5.

Following the agency's determination of probable cause, Plaintiff decided to withdraw

his complaint from the NYSDHR and pursue the matter in federal court, as was his right.

Compl. ¶ 71. On August 1, 2014, the Equal Employment Opportunity Commission ("EEOC")

---

[8] The Report was attached to Plaintiff's Amended Complaint as Exhibit 4. (Doc. 13). Therefore, the Court may consider the Report directly on a motion-to-dismiss.

[9] Among the ways the Report makes this point clear is by explicit comparison to a previous complaint that Plaintiff had filed with the agency on September 6, 2013, after receiving the Second Warning. According to the Report, that previous complaint explicitly alleged "discrimination due to his disability (arthritis, high blood pressure), race/color (Black) and retaliation." Report at 1. The previous complaint, however, was dismissed because Plaintiff had not yet suffered an "adverse employment action" as a result of only the first two warnings—only after the Third Warning did Marriott suspend, and eventually terminate, his employment. *Id.* The Report references the previous complaint and explains why it was dismissed, but does not otherwise incorporate or investigate its allegations, aside from retaliation. To the contrary, the Report carefully distinguishes the retaliation allegation made in the NYSDHR Complaint from the discrimination allegations made in the previous complaint, stating, for example, that Plaintiff "did not allege race discrimination in the instant complaint." *Id.* at 3.

6

provided Plaintiff with a "Dismissal and Notice of Rights" letter, which gave Plaintiff notice of his right to sue in federal court.  *Id.* at ¶ 74; Vir Aff., Ex. 2.

On August 8, 2014, Plaintiff commenced the instant action.  (Doc. 1).  On February 11, 2015, he filed an Amended Complaint alleging violations of Title I of the ADA, the New York State Human Rights Law, and the New York City Human Rights Law.  (Doc. 10).  Among the fourteen causes of action that Plaintiff asserts in his Amended Complaint, only two invoke federal law:  discriminatory termination on the basis of his arthritis under the ADA, and failure to provide reasonable accommodation for his high blood pressure under the ADA.  *Id.* at ¶¶ 185–87, 194–96.  The Amended Complaint *does not* contain a claim for retaliation under the ADA, despite the fact that this was the only claim that Plaintiff brought before the NYSDHR, and despite the fact that Plaintiff *does* assert retaliation claims under the New York State and New York City Human Rights Laws, *id.* at ¶¶ 176–78, 197–99.

## II.    DISCUSSION

### A. Rule 12(b)(6) Motion-to-Dismiss Standard

When ruling on a motion to dismiss pursuant to FRCP 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More

7

specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question on a motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### B.  Plaintiff Has Failed To Exhaust Administrative Remedies

Before bringing a claim under Title I of the ADA to federal court, a plaintiff must first exhaust his administrative remedies before the federal EEOC or the equivalent state-level agency, in this case the NYSDHR.  *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007); *Vargas v. Reliant Realty*, No. 13 Civ. 2341 (PGG), 2014 WL 4446165, at *9 (S.D.N.Y. Sept. 9, 2014).  The statute prescribes the following procedural prerequisites to filing a federal suit:  (1) "[T]he claims forming the basis of [a federal suit] must first be presented in a complaint to the EEOC or the equivalent state agency," (2) the charge must be filed with the EEOC within 180 days of the allegedly unlawful act, or with an equivalent state or local agency within 300 days, and (3) the plaintiff must obtain a "Notice of Right to Sue" letter from the EEOC.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (describing Title VII

exhaustion requirements incorporated into the ADA); 42 U.S.C. § 12117 (incorporating Title VII exhaustion requirements into the ADA); *see also Kpaka v. City Univ. of N.Y.*, No. 14 Civ. 6021 (RA), 2015 WL 4557331, at *2 (S.D.N.Y. July 28, 2015).  Failure to exhaust Title I's administrative remedies constitutes a failure to state a claim pursuant to FRCP 12(b)(6). *McInerney*, 505 F.3d at 138.

Despite the centrality of the NYSDHR Complaint to the exhaustion inquiry, neither party has submitted that document to the Court.  But it is clear that the NYSDHR Complaint did not explicitly allege disability discrimination:  The Report states that Plaintiff "filed this claim under only the basis of retaliation," compares it to Plaintiff's previously-filed-and-dismissed complaint that did allege disability discrimination, and concludes only that NYSDHR's "investigation has uncovered evidence supporting an inference of retaliation sufficient to require a public hearing," without mention of disability discrimination.  Report at 4.  In addition, Plaintiff essentially concedes the omission in his opposition brief.  *See* Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss (Doc. 31) ("Pl.'s Opp'n") at 3 (stating that Plaintiff "filed a complaint" with NYSDHR "regarding the retaliation," without mention of any other claim).  It is thus undisputed that Plaintiff never received a "Notice of Right to Sue" letter from the EEOC with respect to claims of disability discrimination.  And oddly, despite receiving such a letter for a claim of retaliation, Plaintiff has not alleged a federal retaliation claim under the ADA here.

Plaintiff nevertheless invokes an exception to the ADA's exhaustion requirement, Pl.'s Opp'n at 9, in which claims not raised in a plaintiff's initial agency complaint "may be brought to federal court if they are 'reasonably related' to the claim filed with the agency."  *Williams*, 458 F.3d at 70 (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397,

1401 (2d Cir. 1993)).[10]  If the conduct underlying the initial claim would have fallen "within the scope of the [agency] investigation which can reasonably be expected grow out of the charge that was made," the federal claim is considered to be reasonably related.  *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)).[11]  "In this inquiry, the focus should be on the factual allegations made in the [administrative complaint] itself, describing the discriminatory conduct about which a plaintiff is grieving."  *Id.* (citation and internal quotation marks omitted); *see also Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 155 (E.D.N.Y. 2005) ("[T]he factual allegations in an EEOC charge, rather than any legal theories stated therein, should be the focus....") (citing *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1026 (S.D.N.Y. 1993)).  "The central question is whether the complaint filed…gave that agency adequate notice to investigate discrimination on both bases."  *Williams*, 458 F.3d at 70 (citation and internal quotation marks omitted).

Plaintiff suggests that the NYSDHR Complaint's retaliation claim necessarily put the agency on notice of his reasonable-accommodation claim because "the failure to provide reasonable accommodation…was a result of retaliation."  Pl.'s Opp'n at 9.  He thus concludes

---

[10] Plaintiff also contends that the Court may waive the exhaustion requirement "where a plaintiff has in some extraordinary circumstances been prevented from asserting [his] rights, or when the EEOC has incorrectly refused a right to sue."  Pl.'s Opp'n at 9 (citations and internal quotation marks omitted).  But Plaintiff does not explain what "extraordinary" circumstances prevented him from fulfilling the procedural requirements of the ADA, and the EEOC plainly did not refuse to issue a right-to-sue letter here.  Plaintiff also argues that he "is not required to plead or demonstrate administrative exhaustion at the pleading stage," *id.*, but the cases he cites merely stand for the proposition that a plaintiff is not required to conclusively prove exhaustion in his initial complaint, before a defendant has even raised the issue.  A defendant is within its rights to invoke FRCP 12(b)(6) to dismiss a claim based on failure to exhaust, however.  *See McInerney*, 505 F.3d at 138 ("[D]ismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).") (citation omitted).

[11] This Circuit recognizes two other kinds of "reasonably related" claims:  (1) when a federal claim alleges retaliation for filing the agency charge, and (2) when a federal claim alleges additional discriminatory incidents carried out in precisely the same manner alleged in the agency charge.  *See Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir.1993)).  Neither scenario is presented here.

that the NYSDHR Complaint "included all of the same allegations that are at issue in this matter, including the failure to provide a reasonable accommodation under the ADA." *Id.*

Again, there is no way for the Court to determine the merit of these arguments without access to the NYSDHR Complaint itself. *See Williams*, 458 F.3d at 71 (noting that the reasonably-related question is "intimately connected to the facts asserted in the [agency] complaint"). To be sure, the Report does briefly discuss Plaintiff's denied request to delay the Peer Review due to his high-blood pressure, Report at 2, and also mentions that Plaintiff attempted to raise disability discrimination on rebuttal, *id.* at 4. Additionally, while the Report nowhere discusses Plaintiff's alleged disabilities of high-blood pressure and arthritis in the context of a discrimination claim, it does reference Plaintiff's previously-dismissed complaint in which he specifically alleged discrimination based on those two impairments (even if only to remark upon its dismissal and contrast it to the retaliation-only NYSDHR Complaint now before the agency). *Id.* at 1, 4. Given the relatively small universe of facts involved here, it is possible that the NYSDHR Complaint contained enough factual material about Plaintiff's alleged disabilities to put the agency on notice of his discrimination claims.

Nevertheless, on this record, the Court has no basis on which to conclude that Plaintiff's claims of disability discrimination are reasonably related to the retaliation claim alleged in the NYSDHR Complaint. Whether a particular charge of retaliation standing alone would naturally lead the NYSDHR to investigate charges of disability discrimination is necessarily a case-specific inquiry, one the Court is unable to make at present. *Compare, e.g., Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 154–56 (E.D.N.Y. 2005) (finding that complaint alleging retaliation and hostile-work environment sufficiently alerted agency to disability-discrimination claim, regardless of fact that Plaintiff "failed to mark the box on his

[agency complaint] alleging disability discrimination"), *with DD v. Lincoln Hall*, No. 09 Civ. 860 (CS), 2010 WL 695027, at *10 (S.D.N.Y. Feb. 19, 2010) (finding disability-discrimination claim was not reasonably related to complaint that merely "described" disabilities but did not allege a "factual connection between them and Plaintiffs' termination," instead alleging termination based on gender); *see also Williams*, 458 F.3d at 70–71.  The Court thus concludes that Plaintiff has failed to exhaust administrative remedies for his two discrimination claims under the ADA and dismisses those claims without prejudice.

Plaintiff will be granted leave to file an Amended Complaint that better addresses the "reasonably related" exception to the exhaustion requirement by attaching, and making arguments in reference to, the NYSDHR Complaint.  This is not the only deficiency an amended complaint must rectify, however, as the Court discusses immediately below.

### C.  Plaintiff Has Failed To Plead a "Disability" Under the ADA

The ADA prohibits employers from discriminating against individuals on the basis of disability, and defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. §§ 12102(1)(A), 12112(a).  Satisfying that definition at the motion-to-dismiss stage requires Plaintiff to allege that he suffers from a physical or mental impairment, which "substantially limit[s]" an activity that "constitutes a major life activity under the ADA."  *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)), *superseded on other grounds by* 42 U.S.C. § 12102(3)(A); *see also Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ("Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial.") (citing 42 U.S.C. § 12102(2)(A)).  "A 'major life activity' is one that is 'of central importance to daily life,' including functions such as caring for oneself, walking, seeing, hearing,

12

speaking, breathing, learning and working." *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 258 (S.D.N.Y. 2009) (quoting *Capobianco*, 422 F.3d at 56); *see also* 29 C.F.R. § 1630.2(i).  To determine whether a major life activity is substantially limited, "a court may look to several factors, including (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) the existence of any actual or expected permanent or long term impact." *Primmer*, 667 F. Supp. 2d at 258 (citing *Capobianco*, 422 F.3d at 57); *see also* 29 C.F.R. § 1630.2(j).

Plaintiff's discrimination claims rest on two alleged disabilities:  First, Plaintiff alleges that Defendants discriminated against him because of arthritis in the insteps of both his feet, specifically when they disciplined, suspended, and terminated him for his response time that triggered the Third Warning.  Compl. ¶¶ 8, 186.  Second, Plaintiff alleges that Defendants refused to provide him with a reasonable accommodation for his high blood pressure, specifically when they refused to postpone the Peer Review meeting set to review the Second Warning.  *Id.* at ¶¶ 5, 195.  While it is undisputed that arthritis and high blood pressure are physical impairments, Defendants argue that Plaintiff has failed to allege facts sufficient to show that these conditions substantially limit any of Plaintiff's major life activities, as the ADA requires.  *See* Defs.' Br. at 5–9.

Plaintiff alleges a few different ways that his arthritis substantially limits major life activities.  He alleges (1) that arthritis "restricts him from running or engaging in 'fast motion' on a regular basis," such as "run[ning] or mov[ing] fast throughout the hotel when responding to a non-emergency call," (2) that arthritis "prevents him from engaging in…daily exercise," including running, weight lifting, and jumping rope, and (3) that arthritis "causes him ongoing pain for which he regularly takes pain medication."  Compl. ¶¶ 20–30.

The ADA specifically identifies "working" as a major life activity.  42 U.S.C. §
12102(2)(A).  Plaintiff alleges that his arthritis imposes one work-related limitation, namely that
he "cannot run or move fast throughout the hotel when responding to a non-emergency call."
Compl. ¶ 22.  This single allegation, however, does not support a plausible inference of a
*substantial* work limitation, as it affects at most one function of one particular job.  *See Aquinas
v. Fed. Exp. Corp.*, 940 F. Supp. 73, 78 (S.D.N.Y. 1996) ("[A]n individual's inability to perform
a single, particular job does not constitute a substantial limitation in the major life activity of
working.  Rather, there must be a significant restriction on employment generally, *i.e.*, on
plaintiff's ability to perform a class of jobs or a broad range of jobs as compared to an average
person of comparable skills and training.'") (citation and internal quotation marks omitted); *see
also Santiago v. N.Y.C. Police Dep't*, No. 05 Civ. 3035 (PAC), 2007 WL 4382752, at *20
(S.D.N.Y. Dec. 14, 2007) (same), *aff'd*, 329 F. App'x 328 (2d Cir. 2009).  Without additional
allegations supporting a plausible inference that Plaintiff's arthritis prevents him from
performing a broader class of jobs, the Court is unable to conclude that arthritis substantially
limits Plaintiff's ability to work.

Contrary to work, exercise, like the running, weight-lifting, and rope-jumping identified
by Plaintiff, is not even among the examples of major life activities listed in the ADA, 42 U.S.C.
§ 12102(2)(A), and courts have consistently declined to deem it as such.  *See, e.g.*, *Schroeder v.
Suffolk Cty. Cmty. Coll.*, No. 07 Civ. 2060 (JFB), 2009 WL 1748869, at *6 n.2 (E.D.N.Y. June
22, 2009) ("[A]ctivities such as running and jumping have been held to not constitute major life
activities within the meaning of the ADA.") (*citing Rogers v. City of New York Hous., Pres. &
Dev.*, No. 07 Civ. 10565 (LBS), 2008 WL 2937801, at *1 (S.D.N.Y. July 30, 2008); *Piascyk v.
City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn. 1999)); *Johns-Davila v. City of New York*,

14

No. 99 Civ. 1885 (RMB) (AJP), 2000 WL 1725418, at *6 (S.D.N.Y. Nov. 20, 2000) (collecting cases holding that exercise is not a major life activity).  Moreover, the limitations that Plaintiff asserts here are too narrow to be considered substantial.  He can still run in "an emergency situation," and his exercise regimen is limited only in the sense that he cannot exercise "daily" or "on an almost daily basis."  Compl. ¶¶ 23–25, 41.[12]

Likewise, Plaintiff's allegation that his arthritis "causes him ongoing pain for which he regularly takes pain medication," *id.* at ¶ 29, fails to allege that this pain substantially limits a specific major life activity, so it cannot serve as the basis for claiming a disability under the ADA.  "Pain…, in and of itself, does not qualify as disability under the ADA."  *Boyd v. City of New York Parks & Recreation*, No. 05 Civ. 6962 (KMW), 2008 WL 5092841, at *7 (S.D.N.Y. Dec. 2, 2008) (collecting cases); *see also Hallgren v. Bell Atl. Corp.*, No. 99 Civ. 11937 (CM), 2000 WL 726496, at *1 (S.D.N.Y. May 30, 2000) (granting motion to dismiss where plaintiff "list[ed] a number of conditions that could conceivably work a substantial limitation on one or more of her major life activities," but failed to specify "which activities are impacted or in what ways she is limited").  The mere fact that Plaintiff takes pain medication, standing alone, also does not adequately allege a substantial limitation on a major life activity.  *See, e.g.*, *Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 269 (S.D.N.Y. 2001) (finding no substantial limitation on major life activity where plaintiff "sustained permanent injuries for which he has to take medications" and regularly visited doctor to adjust medications), *aff'd*, 40 F. App'x 619 (2d Cir. 2002).

---

[12] As Defendants correctly point out, Defs.' Br. at 6 n.3, Plaintiff's own subjective view that exercise was "of central importance to his daily life," Compl. ¶¶ 24, 26, 28, 41, cannot elevate it to a major life activity for purposes of the ADA.  *See Colwell*, 158 F.3d at 642 ("In deciding whether a particular activity is a 'major life activity,' we ask whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff.").

Plaintiff cites two cases from outside this Circuit to support the proposition that "courts have found arthritis to be a disability under the ADA." *See* Pl.'s Opp'n at 6. But as Plaintiff is well aware, given his own recitation of this principle, the Court's inquiry must be "individualized" and based on the particular allegations in a given case. *Id.* (quoting *Zarzycki v. United Techs. Corp.*, 30 F. Supp. 2d 283, 288 (D. Conn. 1998)). Plaintiff's citation to two cases in which courts found that arthritis substantially limited a major life activity does nothing to rescue the insufficient allegations he has made here, and in fact only serves to highlight the degree to which those allegations fall short. *Cf. Shott v. Rush-Presbyterian*, No. 94 Civ. 6783 (JBG), 2000 WL 765068, at *1, 3 (N.D. Ill. June 9, 2000) (affirming verdict in favor of plaintiff "severely disabled by rheumatoid arthritis," where plaintiff's work involved significant amounts of typing, and "rheumatoid arthritis made it painful and difficult for her to do large amounts of clerical typing" and could "flare[]-up," leaving her with "extremely limited" use of her hands for up to 48 hours); *Stafne v. Unicare Homes, Inc.*, No. 97 Civ. 470 (JRT), 1999 WL 1068490, at *7 (D. Minn. Mar. 3, 1999) ("Given the long-term impact of plaintiff's arthritis on her ability to walk without severe injury, the permanency of her condition, and the immediate effects of her impairment on her ability to walk without pain, the Court finds without hesitation that rheumatoid arthritis substantially limits plaintiff's ability to walk.").

Regarding Plaintiff's high blood pressure, Plaintiff alleges that this physical impairment: (1) "causes him to limit the manner in which he exercises," restricting his ability to run, lift weights, or jump rope on a daily basis because "these activities can cause chest pains and shortness of breath, which are hypertensive emergencies that can be life threatening," (2) forces him to pay an above-average amount of attention to the food and drink he consumes, for example by restricting his sodium and alcohol intake, (3) requires him to take daily medication to avoid

spikes in blood pressure, and (4) "significantly impair[s] his ability to sleep on a nightly basis"

when his high blood pressure is "triggered by external stressors."  *See* Compl. ¶¶ 38–46.

 As already explained, the second and third of these allegations—exercise restrictions and

medication requirements—do not constitute substantial limitations on a major life activity.

 Dietary restrictions, on the other hand, can limit eating, which is a major life activity

under the ADA.  *See Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008) ("The

law of this Circuit is that 'eating' is a major life activity.") (citing *Forest City Daly Hous., Inc. v.

Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999)).  But here, Plaintiff's avoidance of

alcohol and high-sodium food does not interfere with his ability to eat or digest; it evinces only a

commonsense diet.  These "dietary restrictions, unaccompanied by any 'impairment to his ability

to eat and digest food,' simply do not rise to a substantial level."  *Teachout v. N.Y.C. Dep't of

Educ.*, No. 04 Civ. 945 (GEL), 2006 WL 452022, at *5 (S.D.N.Y. Feb. 22, 2006) (quoting

*Shields v. Robinson-Van Vuren Assocs., Inc.*, No. 98 Civ. 8785 (DLC), 2000 WL 565191, at *5

(S.D.N.Y. May 8, 2000)); *see also Batac v. Pavarini Const. Co.*, No. 03 Civ. 9783 (PAC), 2005

WL 2838600, at *7 (S.D.N.Y. Oct. 27, 2005) ("Since Plaintiff's dietary modifications merely

restricted his ability to eat certain foods, Plaintiff's diet did not substantially impair the major life

activity of eating….").[13]

 Lastly, sleep is "undoubtedly a major life activity."  *Colwell*, 158 F.3d at 643.  Plaintiff

alleges that, "when [his] high blood pressure was triggered by external stressors, it significantly

impaired his ability to sleep on a nightly basis."  Compl. ¶ 46.  This single allegation is

insufficient.  Plaintiff does not elaborate on what those external stressors might be, and whether

they interfered with his sleep during the period of alleged discrimination by Defendants.  *See*

---

[13] *Batac* was disapproved of on other grounds by *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62 (2d Cir. 2014).

*Dean v. Westchester Cty. P.R.C.*, 309 F. Supp. 2d 587, 595 (S.D.N.Y. 2004) ("[T]here is no indication that Plaintiff actually suffered from these alleged sleep disorders at the time when he was working for [the Defendant]."). Nor does Plaintiff describe in any detail the frequency, duration, or severity of his sleep impairment. *See Epstein v. Cty. of Suffolk*, No. 14 Civ. 0937 (JS), 2015 WL 5038344, at *6 (E.D.N.Y. Aug. 26, 2015) ("Although sleep is a major life activity, as defined by the ADA, whether a person is legally disabled because of an inability to fall asleep depends upon the severity of their condition.") (citing *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 540 (S.D.N.Y. 2009)); *Xinwa Chang v. MetroPlus Health Plan*, No. 12 Civ. 3181 (WHP), 2014 WL 842635, at *6 (S.D.N.Y. Mar. 4, 2014) (holding that "six months of interference" with Plaintiff's sleep was insufficient because "'[t]emporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities' under the ADA") (quoting *Kennebrew v. N.Y.C. Hous. Auth.*, No. 01 Civ. 1654 (JSR) (AJP), 2002 WL 265120, at *18 n.32 (S.D.N.Y. Feb. 26, 2002)), *aff'd*, 590 F. App'x 74 (2d Cir. 2015). Furthermore, as currently articulated, Plaintiff's allegation does not actually state that his high blood pressure causes his sleep impairment—rather, it suggests that he has no sleep problems despite his high blood pressure, *so long as* "external stressors" are not present. *Cf. Serow v. Redco Foods, Inc.*, 187 F. Supp. 2d 47, 51 (N.D.N.Y. 2002) ("[P]laintiff does not claim that as a result of his cardiovascular disease he loses sleep or is unable to sleep during the day. Instead, he essentially claims that his job affects his sleep because working the third shift requires him to sleep during the day. This is inadequate because *plaintiff has to show that he has an impairment which affects his sleep, not merely a job that affects his sleep*."). In sum, absent more specific factual allegations regarding his sleep problems, Plaintiff fails to plead that his high blood pressure causes a substantial limitation on his ability to sleep. *Compare Baerga v.*

*Hosp. For Special Surgery*, No. 97 Civ. 0230 (DAB), 2003 WL 22251294, at *6 (S.D.N.Y. Sept.

30, 2003) ("Plaintiff's own self-serving descriptions of sleeping difficulties do not, by

themselves, demonstrate an impairment that substantially limits the major life activity of

sleep."), *with Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001) (holding

that "chronic" inability to sleep that was "profound and well documented" constituted a

substantial limitation of major life activity), *aff'd*, 324 F.3d 102 (2d Cir. 2003).

> Plaintiff cites three cases in which courts found that plaintiffs had impairments

substantially limiting their sleep.  Pl.'s Opp'n at 7.  Once again, beyond supporting the

categorical (and undisputed) proposition that sleep is a major life activity, these cases do nothing

to salvage the spare, conclusory allegation that Plaintiff presents here.  *Cf. Klaes v. Jamestown*

*Bd. of Pub. Utilities*, No. 11 Civ. 606 (RJA), 2013 WL 1337188, at *7 (W.D.N.Y. Mar. 29,

2013) (finding plausible allegations of disability where plaintiff alleged "nerve damage,

'structural' damage to his limbs, sleep apnea and depression," all of which "caused him

substantial sleep difficulties"); *Orne v. Christie*, No. 12 Civ. 290 (JAG), 2013 WL 85171, at *3

(E.D. Va. Jan. 7, 2013) (finding sufficient allegation of disability from plaintiff who "suffers

from sleep apnea, which affected his sleep and concentration"); *Shirley v. Integrated Sys.*

*Improvement Servs., Inc.*, No. 11 Civ. 852 (JGZ), 2012 WL 3776882, at *2 (D. Ariz. Aug. 31,

2012) ("[Plaintiff's] sleep apnea and insomnia constitute impairments that substantially limit the

major life activity of sleeping.  The conditions were severe enough that Shirley self-medicated

with nicotine and fell asleep at work when not self-medicating.").

> Based on his current complaint, Plaintiff has failed to state a claim for ADA

discrimination, because he has not set forth allegations plausibly demonstrating that his physical

impairments substantially limit a major life activity.  The Court thus grants Defendants' motion

to dismiss on this basis, in addition to the Court's holding on exhaustion above.  *See, e.g.*, *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 399–401 (S.D.N.Y. 2011) (dismissing plaintiff's ADA complaint for failure "to allege facts from which to infer that he possesses a physical or mental impairment that substantially limits him in one or more major life activities"). The Court will further address the extent to which Plaintiff is permitted to replead his ADA claims below.

### D. The Court Will Not Exercise Supplemental Jurisdiction Over Plaintiff's State and City Law Claims

In addition to his two federal ADA claims, Plaintiff has brought twelve other claims under the New York State and New York City Human Rights Laws.  Compl. ¶¶ 176–84, 188–93, 197–225.  Because the Court has original jurisdiction over Plaintiff's federal claims, 28 U.S.C. § 1331, it also has supplemental jurisdiction over these state and city law claims pursuant to 28 U.S.C. § 1367(a).  The Court also has discretion, however, to decline exercise of its supplemental jurisdiction if Plaintiff's federal claims are dismissed.  *See* § 1367(c)(3).  In exercising that discretion, district courts should balance judicial economy, convenience, fairness, and comity—the "*Cohill* factors."  *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  "The Second Circuit has deemed it proper to retain supplemental jurisdiction over state law claims in actions that implicate preemption issues, state law claims that remain when federal claims are voluntarily dismissed days before the scheduled start of trial, and state law claims that remain after the district court considered three dispositive motions."  *Mabry*, 769 F. Supp. 2d at 402 (citing *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).

There is no compelling reason to exercise supplemental jurisdiction here.  *See Klein*, 464 F.3d at 262 ("It is well settled that where, as here, the federal claims are eliminated in the early

stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.") (citations omitted).  Thus, having dismissed Plaintiff's federal ADA claims, the Court declines to exercise supplemental jurisdiction over the remaining state and city law claims, and those claims are dismissed without prejudice, for refiling in state court. *See, e.g.*, *Berkery v. Archdiocese of Hartford*, 352 F. App'x 487, 490 (2d Cir. 2009) ("Because the district court's subject matter jurisdiction was predicated on the federal questions presented by [Plaintiff's] claims under ERISA and the ADA, it did not err in declining to exercise supplemental jurisdiction over plaintiffs' state-law claims after dismissing the federal claims.") (citing *Valencia*, 316 F.3d at 305).

### E.  Plaintiff Is Granted Leave to Replead

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires."  FRCP 15(a)(2).  The United States Supreme Court has stated that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish "prejudice or bad faith."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Motions to seek leave to amend are ultimately within the discretion of the district courts, *Foman*, 371 U.S. at 182, but they should be handled with a "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

Indeed, upon granting a motion to dismiss, the "usual practice" in this Circuit is to permit amendment of the complaint.  *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, No. 07 Civ. 10453 (RWS), 2011 WL 4357166, at *2–3 (S.D.N.Y. Sept. 13, 2011) (noting a "strong preference" in favor of granting leave to amend and collecting cases).  Nevertheless, amendment "is not warranted absent some indication as to what [plaintiffs] might add to their complaint in order to make it viable."  *Shemian v. Research In Motion Ltd.*, 570 F. App'x 32, 37 (2d Cir. 2014) (citations omitted).

Here, while it would be futile for Plaintiff to replead his ADA claims based on substantial limitations of his ability to exercise, run, or eat, Plaintiff may be able to set forth viable allegations demonstrating that his arthritis and/or high blood pressure impose substantial limitations on his ability to work and/or sleep.   Plaintiff is thus granted leave to replead on those bases only.  Furthermore, as discussed above, Plaintiff must satisfy the ADA's exhaustion requirement, and therefore must (1) allege a claim for retaliation under the ADA, and/or (2) demonstrate that his ADA claims for disability discrimination were "reasonably related" to the retaliation claim set forth in the NYSDHR Complaint.

III.    **CONCLUSION**

For the reasons set forth above, Defendants' motion is GRANTED and Plaintiff's Amended Complaint (Doc. 10) is dismissed without prejudice.  Plaintiff's Second Amended Complaint must be filed, if it all, on or before **February 23, 2016**.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 17).

It is SO ORDERED.


Dated:     February 2, 2016
           New York, New York

                                          _____
                                          Edgardo Ramos, U.S.D.J.

23